# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRIS LHAMON,<br><br>    Plaintiff,<br><br> v.<br><br>CARDTRONICS PLC, MARK ROSSI, DOUGLAS BRAUNSTEIN, JULIE GARDNER, WARREN JENSON, PATRICK PHILLIPS, JULI SPOTTISWOOD, and RAHUL GUPTA,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

  Plaintiff Chris Lhamon ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Cardtronics plc ("Cardtronics" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Cardtronics and the Defendants.

## SUMMARY OF THE ACTION

  1. This is an action brought by Plaintiff against Cardtronics and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section

14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to NCR Corporation ("NCR") (the "Proposed Transaction").

2.      On January 25, 2021, the Company entered into an Acquisition Agreement (the "Acquisition Agreement") with STERIS.  Pursuant to the terms of the Acquisition Agreement the Company's shareholders will receive $39.00 in cash per share of Cardtronics owned (the "Merger Consideration").

3.      On March 30, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Cardtronics and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cardtronics shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Cardtronics shares.

9.      Defendant Cardtronics is incorporated under the laws of the United Kingdom and has its principal executive offices located at Building 4, 1st Floor Trident Place, Mosquito Way, Hatfield, United Kingdom, AL10 9UL.  The Company's common stock trades on the New York Stock Exchange under the symbol "CMD."

10.     Defendant Mark Rossi ("Rossi") is and has been the Chairman of the Board of Cardtronics at all times during the relevant time period.

11.     Defendant Douglas Braunstein ("Braunstein") is and has been a director of Cardtronics at all times during the relevant time period.

12.     Defendant Julie Gardner ("Gardner") is and has been a director of Cardtronics at all times during the relevant time period.

13.     Defendant Warren Jenson ("Jenson") is and has been a director of Cardtronics at all times during the relevant time period.

14.    Defendant Patrick Phillips ("Phillips") is and has been a director of Cardtronics at all times during the relevant time period.

15.    Defendant Juli Spottiswood ("Spottiswood") is and has been a director of Cardtronics at all times during the relevant time period.

16.    Defendant Rahul Gupta ("Gupta") is and has been a director of Cardtronics at all times during the relevant time period.

17.    Defendants Rossi, Braunstein, Gardner, Jenson, Phillips, Spottiswood, and Gupta are collectively referred to herein as the "Individual Defendants."

18.    The Individual Defendants, along with Defendant Cardtronics, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19.    Cardtronics provides convenient automated consumer financial services through its global network of ATMs. As of December 31, 2019, the Company was the world's largest ATM owner/operator, providing various services to approximately 285,000 ATMs globally.

### The Company Announces the Proposed Transaction

20.    On January 12, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> ATLANTA & HOUSTON--(BUSINESS WIRE)--NCR Corporation (NYSE: NCR), a global enterprise technology provider for the financial, retail and hospitality industries, and Cardtronics (Nasdaq: CATM), the world's largest non-bank ATM operator and service provider, today announced that they have entered into a definitive agreement under which NCR will acquire all outstanding shares of Cardtronics for $39.00 per share in an all-cash transaction with an enterprise value of approximately $2.5 billion, including debt. The transaction has been approved by the Boards of Directors of both companies.

"This transaction accelerates the NCR-as-a-Service strategy we laid out at Investor Day in December, further shifts NCR's revenue mix to software, services and recurring revenue, and adds value for our customers," said Michael D. Hayford, President and Chief Executive Officer of NCR. "We have had a long-standing relationship with Cardtronics and its outstanding team. Its Allpoint network is highly complementary to NCR's payments platform, and the combined company will be able to seamlessly connect retail and banking customers. Simply put, we are better together."

"We are pleased to announce this compelling transaction, which will deliver superior value to our shareholders," said Edward H. West, Chief Executive Officer of Cardtronics. "This is a testament to the strength and value of Cardtronics, our talented team and customer base, and the complementary nature of our two businesses. Our Board determined that this transaction, which follows a comprehensive process and review of alternatives, is in the best interest of Cardtronics and our shareholders."

The combined company is expected to achieve $100-$120 million in run rate operating cost synergies by the end of 2022. The transaction is expected to be accretive to NCR's non-GAAP EPS in the first full year following the close of the transaction.

NCR plans to finance the transaction with cash on hand and fully committed financing from Bank of America, N.A. The transaction is expected to close in mid-year 2021, subject to receipt of regulatory approvals and satisfaction of customary closing conditions, including approval by Cardtronics' shareholders. Upon completion of the transaction, Cardtronics will become a privately held company and Cardtronics' common shares will no longer be listed on any public market.

Prior to entry into the agreement with NCR, Cardtronics terminated its previously announced acquisition agreement with an entity affiliated with funds managed by affiliates of Apollo Global Management, Inc. in accordance with the terms of the acquisition agreement. In connection with the termination, NCR paid the termination fee of $32.6M in accordance with the terms of the acquisition agreement.

BofA Securities is serving as financial advisor to NCR and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel. Goldman Sachs & Co. LLC is serving as financial advisor to Cardtronics, and Weil, Gotshal & Manges LLP and Ashurst LLP are serving as legal counsel.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

21.     On March 30, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

23.     The Proxy Statement contains summary projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

25.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26.     Specifically, with respect to the Company's December 2020 projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Adjusted EPS; (iii) Adjusted EBITDA – CapEx; and (iv) Unlevered Free Cash Flow.

27.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding Goldman Sachs' Financial Opinion

28.     The Proxy Statement contains the financial analyses and opinion of Goldman Sachs & Co. LLC ("Goldman Sachs") concerning the Proposed Transaction, but fails to provide material information concerning such.

29.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Goldman Sachs' use

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

of the discount rates ranging form 7.5% to 8.5%; and (ii) the inputs and assumptions underlying Goldman Sachs' use of the range of terminal year multiples of 6.0x to 7.5x.

30.    With respect to Goldman Sachs' *Illustrative Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Goldman Sachs' use of Adjusted P/E multiples ranging from 12.0x to 16.0x; and (ii) the inputs and assumptions underlying Goldman Sachs' use of the discount rate of 9.6%.

31.    With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

32.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

33.    Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

34.    The Proxy Statement contains information concerning the process leading up to the Proposed Transaction, but fails to include material information concerning such.

35.    The Proxy Statement notes that the Company entered into non-disclosure agreements several prospective suitors. However, the Proxy Statement fails to disclose whether any of these interested parties entered into any "don't ask, don't waive" ("DADW") provisions that would prevent the potential suitor from making a topping bid for the Company.

36.    Lastly, the Company must disclose additional information concerning the negotiations with AGM and/or HEC.

37.    This information is material to shareholders in deciding whether to tender their shares in favor of the Proposed Transaction, as it would show whether or not a superior offer for the Company was available.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

38.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

40.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is

made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

43. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

44. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are

no material misstatements or omissions.

45.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

46.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

47.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Cardtronics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cardtronics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

52.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.    Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 20, 2021                                    Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com

**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*